IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) GREG SPEARS, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CIV-23-220-DES |
| (1) CHRIS MORRIS, in his official capacity Pittsburgh County Sheriff, | ) JURY TRIAL DEMANDED |
| (2) JOHN PERTEET, | ) |
| (3) JAYDON PINGLETON, | ) ATTORNEY LIEN CLAIMED |
| Defendants. | ) |

**COMPLAINT**

**COMES NOW**, Plaintiff Greg Spears ("Plaintiff" or "Mr. Spears"), and for his causes of action against the above-named Defendants, alleges and states the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Greg Spears is a citizen of Oklahoma and a resident of Pittsburg County. Mr. Spears is also a tribal citizen of the Choctaw Nation.

2. Defendant Chris Morris ("Sheriff Morris" or "Defendant Morris") is the Sheriff of Pittsburg County, Oklahoma, residing in Pittsburg County, Oklahoma and acting under color of state law. Sheriff Morris is sued purely in his official capacity. It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014). Thus, in suing Sheriff Morris in his official capacity, Plaintiff has brought suit against the County/Pittsburg County Sheriff's Office ("PCSO"). The Pittsburg County Sheriff is ultimately responsible for ensuring the safety and well-being of persons detained and housed at the Pittsburg County Jail ("Jail"), including the provision of adequate medical care. In addition, the

Pittsburg County Sheriff is responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of PCSO and the Jail, including the policies, practices, procedures, and/or customs closely related to the violation of Mr. Spears' rights as set forth in this Complaint.

3. Defendant John Perteet ("Officer Perteet") was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Pittsburg County/PCSO. Officer Perteet was responsible, in part, for ensuring Mr. Spears' health and well-being, and assuring that the medical and safety needs of Mr. Spears were met, during the time he was in the custody of PCSO. Officer Perteet is being sued in his individual capacity.

4. Defendant Jaydon Pingleton ("Officer Pingleton") was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Pittsburg County/PCSO. Officer Pingleton was responsible, in part, for ensuring Mr. Spears' health and well-being, and assuring that the medical and safety needs of Mr. Spears were met, during the time he was in the custody of PCSO. Officer Pingleton is being sued in his individual capacity.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth and/or Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

6. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Eighth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

8. Paragraphs 1-7 are incorporated herein by reference.

- **Facts Specific to Mr. Spears**

9. Mr. Spears was booked into the Pittsburg County Jail on the evening of July 5, 2021.

10. Mr. Spears was a pretrial detainee.

11. Mr. Spears is an insulin-dependent diabetic, requiring daily blood sugar monitoring and insulin injections.

12. Upon booking, Mr. Spears had a diabetes-related infection in his right big toe. He was taking antibiotics to treat the infection.

13. Upon booking, Mr. Spears informed Officer Perteet and Officer Pingleton that he was diabetic, that and that he required daily blood sugar monitoring and insulin injections.

14. Upon booking, Mr. Spears also informed Officer Perteet and Officer Pingleton that he had a diabetes-related infection in his toe which required treatment with antibiotics.

15. Mr. Spears was then placed in a general population pod.

16. The first full day that he was housed in the Jail, July 6, 2021, Mr. Spears requested insulin and antibiotics. Mr. Spears showed Officer Perteet the sores on his toe. Mr. Spears further asked to see the Jail's nurse. With deliberate indifference, Officer Perteet completely ignored Mr. Spears' request. He was provided no mediations and was not scheduled to see a nurse.

17. This same pattern of deliberate indifference continued for approximately ***15 days***.

18. Mr. Spears was denied insulin and antibiotics, and any other medical treatment, for approximately 15 days.

19. Mr. Spears did not see a nurse or any other medical provider at the Jail for approximately 15 days.

20. Without insulin or antibiotics for 15 days, Mr. Spears became extremely ill. He was

3

suffering in severe pain. The infection in his toe worsened precipitously.

21. Each and every day at the Jail, from July 6 to approximately July 21, 2021, Mr. Spears complained to Jail staff, including Officer Perteet and/or Officer Pingleton, that he was feeling ill and that the infection in his toe was worsening.

22. Each and every day at the Jail, from July 6 to approximately July 21, 2021, Mr. Spears complained to Jail staff, including Officer Perteet and/or Officer Pingleton, that he needed his insulin and antibiotics.

23. However, with deliberate indifference, the Jail's staff, including Officer Perteet and Officer Pingleton, completely disregarded Mr. Spears' complaints and requests from July 6 through July 21, 2021.

24. Within a few days at the Jail, with no medical attention, swelling in Mr. Spears' feet, ankles and legs began to worsen. He was suffering severe muscle and abdominal pain. The pain became so bad that he could hardly stand or walk.

25. The sores his toe were visibly growing.

26. It was obvious, even to a layperson, for a period of approximately 15 days, that Mr. Spears needed urgent medical attention.

27. However, with deliberate indifference, the Jail's staff, including Officer Perteet and Officer Pingleton, utterly ignored Mr. Spears' deteriorating condition for approximately 15 days.

28. During these 15 days, there was often no access to any medical staff at the Jail leaving untrained detention officers in the position of controlling Mr. Spears' medical fate.

29. Mr. Spears condition grew so bad that other inmates began to advocate for him and request medical attention on his behalf. These requests, too, were ignored.

30. On or about July 21, 2021, Mr. Spears was seen by a nurse at the Jail.

31. Mr. Spears was finally started on insulin and antibiotics, but the damage had already been

done.

32. In a clear effort to avoid any expense associated with Mr. Spears' treatment, rather than emergently send him to the hospital, the nurse, on behalf of PCSO, referred Mr. Spears to the Choctaw Clinic, where he would be treated free of cost.

33. An x-ray at the Choctaw Clinic showed the development and significant worsening of osteomyelitis in Mr. Spears' toe. Osteomyelitis is inflammation or swelling from an infection that occurs in the bone.

34. As it became clear that Mr. Spears would likely require amputation of his entire toe, in an plain effort to again avoid any further costs associated with his condition, PCSO released Mr. Spears from the Jail on July 23, 2021, on his own recognizance, or "OR".

35. Mr. Spears was later forced to amputate his entire toe.

■ **Policies, Customs and Practices of the PCSO/Pittsburg County Sheriff**

36. There is an affirmative link between the unconstitutional acts and/or omissions of employees or agents of the County/PCSO, as described supra, including Officers Petreet and Pingleton, and policies, practices and/or customs which the County/PCSO promulgated, created, implemented and/or possessed responsibility for.

37. To the extent that no single officer violated Mr. Spears' constitutional rights, the Sheriff/County/PCSO is still liable under a theory of a systemic failure of medical policies and procedures as described below. There were such gross deficiencies in staffing, facilities, equipment and procedures, at the Jail, that Mr. Spears was effectively denied constitutional conditions of confinement.

38. County sheriffs may be held liable for the maintenance of an unconstitutional health care delivery system. As devised by Sheriff Morris, the Jail has no functioning medical delivery system, ensuring that detainees with serious and/or complex medical or mental health needs, like

Mr. Spears, will be deprived of constitutionally adequate medical and mental health care.

39. The Sheriff maintained a policy or custom of insufficient medical staffing, resources, and training, chronic delays in care and indifference toward medical needs at the Pittsburg County Jail.

40. At all pertinent times, there was systemic failure of medical policies and procedures at the Jail.

41. At all pertinent times, there were such gross deficiencies in medical staffing, facilities, equipment, and procedures that Mr. Spears was effectively denied access to adequate medical care.

42. As a matter of policy, practice and custom, the Sheriff failed to staff the Jail with qualified professionals, failed to provide reasonable access to a physician and emergent medical care and failed to supervise the Jail's medical delivery system.

43. As a matter of policy practice and custom, employees at the Jail, who are entrusted to ensure that detainees receive necessary medical care receive no meaningful medical or mental health training and are not qualified or legally permitted to medically assess, evaluate or diagnose serious or complex medical or mental health conditions. As a matter of policy, custom and practice, employees at the Jail with no medical training, primarily lay detention staff, are tasked with identifying medical conditions and making medical decisions.

44. PCSO adopted a policy stating that "[s]upervisors will determine the immediacy of medical complaints and take the appropriate action." However, PCSO failed to train employees, including Officer Petreet and Officer Pingleton, in how to determine "the immediacy of medical complaints," particularly when medical personnel were away from the Jail. The Tenth Circuit has previously held that a "reasonable factfinder could infer that this deficiency in the training was both obvious and closely related" to another inmate's injury at the Jail. *See Lance v. Morris,* 985 F.3d

6

787, 801 (10th Cir. 2021).

45. That other inmate, Dustin Lance, a detainee at the Pittsburg County Jail, was in obvious need of immediate treatment for priapism, but was forced to wait three days. After being denied care at the Jail for days, Mr. Lance required emergency surgery on his penis and suffered permanent impotence.

46. The *Lance* Court reiterated that a plaintiff may satisfy "the subjective prong [of deliberate indifference] through reports of pain, … repeated requests for medical treatment, and other detainees' insistence that the need for medical attention was obvious." *Lance*, 985 F.3d at 799.

47. Furthermore, in reversing the finding of qualified immunity for three of the PCSO detention officers, the *Lance* Court agreed with the plaintiff's assertion that Tenth Circuit "precedents have clearly established a jail guard's constitutional obligation to obtain medical care when (1) a detainee experiences severe pain and (2) the jail guard controls access to medical care." *Lance*, 985 F.3d at 799 (citing *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019); *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002); *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000); *Al-Turki v. Robinson*, 762 F.3d 1188, 1195 (10th Cir. 2014) and *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005)).

48. The *Lance* decision is directly on point as Mr. Spears also experienced an obviously serious medical condition and severe pain -- and repeatedly requested medical attention -- in a situation where guards controlled his access to care.

49. The *Lance* decision, issued in January of 2021, also put the Sheriff on notice that the training of detention officers in how to determine "the immediacy of medical complaints" was wholly deficient. Yet, it is clear that by July 2021, the Sheriff had failed to take reasonable measures to alleviate the training deficiency.

50. As was the case in *Lance*, here, the Sheriff was deliberately indifferent with respect

to the inadequate training.

51.     Further, as was at issue in *Lance*, PCSO has a policy or custom of requiring detainees to be returned to the detention center for release on their own recognizance before receiving further medical treatment.

52.     Here, PCSO utilized that policy or custom to avoid the expense of further medical treatment for Mr. Spears.

53.     Mr. Spears suffered a worsening of his condition and continuing and extensive pain as a result.

54.     The Sheriff left it to the "common sense" of his untrained detention staff to determine whether an inmate had a serious medical condition and needed emergent care.

55.     Many of these failures stem from financial incentives to avoid the costs of inmate prescription medications and off-site treatment.

56.     By instituting such a medical delivery "system", the Sheriff has utterly failed to ensure that detainees and inmates are provided with clinical supervision from qualified staff. And the Sheriff himself failed to supervise the Jail's medical delivery "system".

57.     In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it. The Sheriff/County/PCSO was charged with maintaining a constitutionally firm medical delivery system. Instead, as described herein, the County effectively maintained no medical delivery system at all. At a minimum, the Sheriff/County/PCSO knew, or should have known, of the substantial risks inherent in maintaining his facially deficient "system".

## CAUSE OF ACTION

**VIOLATION OF MR. SPEARS' CONSTITUTIONAL**
**RIGHT TO ADEQUATE MEDICAL CARE**
**(42 U.S.C. § 1983)**

### A.     Individual Liability/Underlying Violations

58. Paragraphs 1-57 are incorporated herein by reference.

59. Mr. Spears had medical needs that were sufficiently serious, objectively, to be of a Constitutional dimension.

60. As described above, numerous employees or agents of the Sheriff/County/PCSO, including Officer Perteet and Officer Pingleton, knew -- or it was obvious -- that Mr. Spears was at substantial risk of serious harm.

61. Officer Perteet, Officer Pingleton, and other employees or agents of the Sheriff/County/PCSO, disregarded these known and obvious risks in deliberate indifference to Mr. Spears' serious medical needs.

62. It was obvious that Mr. Spears needed an immediate and emergent medical evaluation and treatment from a qualified professional, but such services were denied, delayed and obstructed.

63. Under the circumstances, Officer Perteet and Officer Pingleton had a duty and obligation to assure that Mr. Spears received treatment or access to medical personnel capable of evaluating the need for treatment. They did neither, in deliberate indifference to Mr. Spears' serious medical health needs.

64. As a direct and proximate result of this deliberate indifference, as described above, Mr. Spears experienced unnecessary physical pain, a worsening of his condition, severe emotional distress, mental anguish, financial loss and the loss of his toe.

65. As direct and proximate result of Defendants' conduct, Plaintiff is entitled to compensatory damages.

66. Plaintiff is entitled to damages due to the deprivation of his rights secured by the U.S.

Constitution, including punitive damages.

### B. Official Capacity Liability (Against Sheriff Morris)

67. Paragraphs 1-66 are incorporated herein by reference.

68. There is an affirmative link between the unconstitutional acts and/or omissions of employees or agents of the County/PCSO, as described supra, including Officer Perteet and Officer Pingleton, and policies, practices and/or customs which the County/PCSO promulgated, created, implemented and/or possessed responsibility for.

69. To the extent that no single officer violated Mr. Spears' constitutional rights, the Sheriff/County/PCSO is still liable under a theory of a systemic failure of medical policies and procedures as described herein. There were such gross deficiencies in staffing, facilities, equipment and procedures, at the Jail, that Mr. Spears was effectively denied constitutional conditions of confinement.

70. Such policies, customs and/or practices are specifically set forth in paragraphs 36-57, *supra*.

71. The County/PCSO, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to detainees', including Mr. Spears', health and safety.

72. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Spears suffered injuries and damages as alleged herein.

**WHERFORE,** based on the foregoing, Plaintiff prays this Court grant the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, punitive damages, the costs

of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully,

/s/ Robert M. Blakemore
Daniel Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
**Smolen & Roytman**
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone: (918) 585-2667
Fax:    (918) 585-266

***Attorneys for Plaintiff***